**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jordan L Morris, | No. CV-22-00370-TUC-JGZ |
| Plaintiff, | **ORDER** |
| v. | |
| Pacific Dental Services LLC, et al., | |
| Defendants. | |

Plaintiff Jordan Morris brings this action against his former employers, PDS Arizona Regional Dental Services, LLC (PARDS) and Pacific Dental Services, LLC (PDS), asserting claims under the Americans with Disabilities Act (ADA) and the Arizona Fair Wages and Healthy Families Act. (Doc. 1 ¶¶ 74–102.) Pending before the Court is Defendants' Motion to Dismiss and Compel Arbitration. (Doc. 18.) Defendants assert that all of Morris's claims arise out of his employment and are subject to an arbitration agreement under the Federal Arbitration Act (FAA). (*Id.* at 2; *see* Doc. 18-1 at 15–16.) They seek dismissal of the Complaint and an order compelling Morris to submit his claims to binding arbitration. (Doc. 18 at 1.) Morris argues the FAA does not apply and the arbitration agreement is void and unenforceable. (Doc. 19 at 7–14.) The Court requested that the parties submit supplemental briefs addressing whether the arbitration agreement arose from a contract evidencing a transaction involving commerce. (Doc. 21.) The motion is fully briefed, (Docs. 18–20), and the parties submitted the requested supplemental briefs, (Docs. 22–23). For the following reasons, the Court will grant Defendants' motion.

**BACKGROUND**

Morris was employed by PARDS and PDS as an Associate Dentist in January 2017 and became a partner in January 2018. (Doc. 1 ¶¶ 15–18.) He was terminated from his employment on September 22, 2021. (*Id.* ¶¶ 57–58.)

In the course of his employment with Defendants, Morris executed a number of agreements, including an Amended and Restated Dentist Employment Agreement (Employment Agreement), (Doc. 18-1 at 3–7), and an Amended and Restated Binding Arbitration Agreement (Arbitration Agreement), (*id.* at 15–16). The Employment Agreement sets out the terms of Morris's employment. The Arbitration Agreement requires the parties to arbitrate "all disputes that may arise out of the employment context." (*Id.* at 15 ¶ 1.)[1] The specific provision of the Arbitration Agreement at issue in this lawsuit states:

> Because of the mutual benefits (such as reduced expense and increased efficiency) which private binding arbitration can provide both PARDS and Employee, both PARDS and Employee agree that any claim, dispute, and/or controversy (including, but not limited to, any claims of discrimination and harassment, whether they be based on local or state law, Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Family and Medical Leave Act, the Fair Labor Standards Act or other local, state or federal laws or regulations) that the Employee or PARDS may have against the other shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act, in conformity with the procedures set forth in the applicable statutes. This specifically includes any claim . . . Employee may have against PARDS, which would otherwise require or allow resort to any court or other governmental dispute resolution forum arising from, related to, or having any relationship or connection whatsoever with Employee's seeking employment with, employment by, termination of employment, or other association with PARDS.

(*Id.*) The Arbitration Agreement specifies that arbitration proceedings be held in Orange County, California, and that they be administered by JAMS. (*Id.* at 15 ¶ 3.) Finally, the Agreement states: "It is the intent of the parties that the arbitration provisions hereof be enforced to the fullest extent permitted by applicable law, including but not limited to the

---

[1]  The Arbitration Agreement also contains a list of claims that are not covered by the Agreement. (Doc. 18-1 at 15 ¶ 2.) This action does not assert any of the excluded claims.

Federal Arbitration Act, 9 U.S.C. § 2." (*Id.* at 15 ¶ 3(D).)

In his Opposition, Morris points to another agreement the parties executed in the course of his employment—the Amended and Restated Partnership Agreement of Tortolita Dental Group and Orthodontics, LLP (Partnership Agreement), (Doc. 19-1 at 2–27), which has different provisions for arbitration than those contained in the Arbitration Agreement. The Partnership Agreement provides for mandatory binding arbitration of certain claims—"[a]ny dispute, claim, or controversy that may arise under or relate to this Agreement (including the validity, scope and enforceability of this arbitration provision),"—but, in contrast to the Arbitration Agreement, requires that the arbitration proceedings be held "in a county mutually agreeable to the parties in the State of Arizona, and [] be administered by American Arbitration Association (AAA) in accordance with its applicable rules . . . ." (*Id.* at 26 ¶ 12.10(b).)

## APPLICABLE LAW

Arbitration is matter of contract between the parties. An agreement to arbitrate is "a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). A written agreement to arbitrate in "a contract evidencing a transaction involving commerce" is governed by the FAA, which provides that any arbitration agreement within its scope "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

A motion to compel arbitration is decided according to the standard used by district courts in resolving summary judgment motions pursuant to Rule 56 of the Federal Rules of Civil Procedure. *Coup v. Scottsdale Plaza Resort, LLC*, 823 F. Supp. 2d 931, 939 (D. Ariz. 2011). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *see* 9 U.S.C. § 4. Thus, if the FAA applies, the Court must determine: (1) whether a valid agreement to arbitrate exists; and (2) if so, whether the

1    arbitration agreement encompasses the dispute or claims at issue. *Chiron Corp. v. Ortho*

2    *Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

3                                **DISCUSSION**

4            In Opposition to Defendants' Motion to Dismiss and Compel Arbitration, Morris

5    argues that: (1) the FAA does not apply here because the parties' agreements are for

6    performance of a dental practice solely within the State of Arizona; (2) the arbitration terms

7    regarding JAMS and AAA in the Arbitration Agreement and Partnership Agreement are

8    conflicting and therefore void and unenforceable; and (3) four arbitration provisions should

9    be held unenforceable or unconscionable and the entirety of the arbitration provisions

10   found void. The Court addresses each argument.

11   **I.      The Parties' Agreement Falls within the Scope of the FAA.**

12           The Arbitration Agreement provides that disputes between Morris and PARDS:

13   "shall be submitted to and determined exclusively by binding arbitration under the Federal

14   Arbitration Act, in conformity with the procedures set forth in the applicable statutes."

15   (Doc. 18-1 at 15 ¶ 1.) The Arbitration Agreement further states: "It is the intent of the

16   parties that the arbitration provisions hereof be enforced to the fullest extent permitted by

17   applicable law, including but not limited to the Federal Arbitration Act, 9 U.S.C. § 2." (*Id.*

18   at 15 ¶ 3(D).) So long as the exceptions in § 1 do not apply, the reach of FAA § 2 extends

19   to any "contract evidencing a transaction involving commerce." *See* 9 U.S.C. §§ 1–2. The

20   Court finds that the Arbitration Agreement evidences a transaction involving commerce

21   and that the FAA governs the agreement.

22           The term "involving commerce" in the FAA signals the broadest permissible

23   exercise of Congress's Commerce Clause power. *Citizens Bank v. Alafabco, Inc.*, 539 U.S.

24   52, 56 (2003). Under the Commerce Clause, Congress can regulate purely local activities

25   that, as an economic class of activities, have a substantial effect on interstate commerce.

26   *Gonzales v. Raich*, 545 U.S. 1, 17 (2005). The FAA thus governs in individual cases, even

27   those lacking a specific effect upon interstate commerce, if in the aggregate the economic

28   activity in question would represent a general practice subject to federal control. *Citizens*

*Bank*, 539 U.S. at 56–57.

Morris argues his work for Defendants does not involve interstate commerce because his employment agreement restricts his employment to Arizona where he holds an Arizona Dental License. (Doc. 19 at 7.) Morris also argues he worked at a single location in Tucson, Arizona; performed no dental services outside the state; and was not responsible for procuring out-of-state supplies for the dental office where he worked. (Doc. 23 at 2.) As a result, Morris contends the FAA does not govern and the Court must look to Arizona law, which provides that agreements to arbitrate between employers and employees are unenforceable.[2] (Doc. 19 at 6.)

As Defendants point out, Morris's employment involved a number of interstate activities. Nearly all supplies and equipment used by Morris in his dental practice were procured by PDS from outside of Arizona. (Doc. 22 at 2.) Morris also traveled to out-of-state professional meetings organized by PDS, including a September 2021 meeting held in Dallas, Texas. (*Id.* at 3.) On at least three occasions, Morris met with a PDS leadership coach who resided in California. (*Id.*) These activities alone, in the context of one dentist's purely local practice, might not affect or involve interstate conference. However, they fall squarely within an economic class of activities and, in the aggregate, they have a substantial effect on interstate commerce. *See Citizens Bank*, 539 U.S. at 56–57; *Raich*, 545 U.S. at 17.

Morris urges the Court to take a narrower view of the term "involving commerce." In support, he cites *Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186 (1974), and *United States v. American Building Maintenance Industries*, 422 U.S. 271 (1975). (Doc. 23 at 3.) In *Gulf Oil Corp.*, the Supreme Court interpreted the term "engaged in commerce" as stated in §§ 3 and 7 of the Clayton Act and § 2 of the Robinson-Patman Act. 419 U.S. at 193–94. Likewise, in *American Building Maintenance Industries*, the Supreme Court interpreted the "engaged in commerce" language in § 7 of the Clayton Act. 422 U.S. at 275. In both cases, the Supreme Court held that the phrase "engaged in commerce" did not reflect

---

[2] The Arizona Arbitration Act "*shall not apply* to an agreement to arbitrate any existing or subsequent controversy . . . [b]etween an employer and employee or their respective representatives." A.R.S. § 12-3003(B)(1) (emphasis added).

1    Congress's full exercise of power under the Commerce Clause. *Gulf Oil Corp.*, 419 U.S.

2    at 201–02; *Am. Bldg. Maint. Indus.*, 422 U.S. at 280. The term "involving commerce" in

3    § 2 of the FAA, by contrast, does signal Congress's full exercise of power under the

4    Commerce Clause. *Citizens Bank*, 539 U.S. at 56; *see also Sw. Airlines Co. v. Saxon*, 142

5    S. Ct. 1783, 1789 (2022) ("We observed that Congress used 'more open-ended

6    formulations' like 'affecting' or 'involving' commerce to signal 'congressional intent to

7    regulate to the outer limits of authority under the Commerce Clause.' By contrast, Congress

8    used a 'narrower' phrase—'engaged in commerce'—when it wanted to regulate short of

9    those limits.") (internal citations omitted). Morris's reliance on *Gulf Oil Corp.* and

10   *American Building Maintenance Industries* is thus misplaced. With the full authority of the

11   Commerce Clause, § 2 of the FAA governs the economic activities of local dentists, such

12   as Morris, who receive and use out-of-state services, supplies, and equipment.

13   **II.     A Valid Agreement To Arbitrate Exists.**

14          Morris argues that no valid agreement to arbitrate exists because material terms in

15   the Arbitration Agreement are in conflict with the arbitration provision in the Partnership

16   Agreement, making both void. (Doc. 19 at 9–10.) Morris also argues that the Arbitration

17   Agreement is unenforceable because it contains unconscionable provisions, deprives him

18   of the statutory right to seek punitive and non-economic damages, and awards fees to a

19   prevailing defendant. (*Id.* at 10–15.) The Court agrees in part.

20          Courts generally apply ordinary state-law principles when deciding whether the

21   parties agreed to arbitrate a matter. *First Options of Chi., Inc.*, 514 U.S. at 944. State-law

22   contract defenses such as fraud, duress, and unconscionability can be applied to invalidate

23   arbitration agreements. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996);

24   *Ticknor v. Choice Hotels Intern.*, 265 F.3d 931, 936–37 (9th Cir. 2001). If a court finds a

25   portion of an agreement is unenforceable or void, but the agreement contains a severability

26   clause, the court may sever the unenforceable portion and enforce the remainder of the

27   agreement. *See Cooper v. QC Fin. Servs., Inc.*, 503 F. Supp. 2d 1266, 1291 (D. Ariz. 2007).

28   Applying these principles, the Court finds that the parties entered into a clear and

unmistakable agreement to arbitrate claims arising out of Morris's employment. The Court further finds that the agreement is enforceable except for one provision which can be modified to be consistent with the law.

**A.    The Arbitration Agreement's Forum Provision Is Not Void.**

Morris argues that a conflict between the arbitration forum provisions in the Arbitration Agreement and the Partnership Agreement shows "there was no meeting of the minds on the material terms of arbitration," and thus those terms are void. (Doc. 19 at 8–9.) The Arbitration Agreement, which applies to disputes arising out of the Employment Agreement, provides that "arbitration proceedings shall be held in Orange County, California, and shall be administered by JAMS." (Doc. 18-1 at 15 ¶ 3(B).) The Partnership Agreement—which organizes an Arizona limited liability partnership between Morris, PARDS, and a non-party dentist—provides that any dispute arising under or relating to the Partnership Agreement must be submitted to binding arbitration "in a county mutually agreeable to the parties in the State of Arizona, and shall be administered by the American Arbitration Association." (Doc. 19-1 at 26 ¶ 12.10(b).) Morris is incorrect that these two provisions are in conflict.

Morris's claims do not arise out of the Partnership Agreement. Morris's Complaint alleges disability discrimination in violation of the ADA and unlawful retaliation in violation of Arizona law. These claims arise only out of his employment relationship with PARDS and PDS, and are therefore governed by the Employment Agreement and the arbitration provisions contained in the separate Arbitration Agreement. Morris's claims do not relate to the Tortolita Dental Group partnership; thus, the Partnership Agreement is not implicated here. (*See* Doc. 1 ¶ 1.) In Claim One, Morris specifically alleges violations of the ADA and disability discrimination in employment. Claim One states: "Defendants jointly are employers and Plaintiff a qualified employee within the definitions of the ADA, 42 U.S.C. §§ 12102(2) and 12111(2), (4), and (5)." (*Id.* ¶¶ 75–76.) In Claim Two, Morris alleges that Defendants violated the anti-retaliation provision of Arizona's paid sick leave law, which applies to retaliation by an employer against an employee who requests or uses

paid sick time for a qualifying reason. (*Id.* ¶¶ 91–93.) Morris's claims do not relate to a breach of the Partnership Agreement, and Morris does not seek to enforce that agreement or pursue any remedies arising out of that agreement. Therefore, the arbitration terms in the Partnership Agreement are irrelevant and no conflict exists between the Partnership Agreement and the Arbitration Agreement. Consequently, there is no reason to conclude that the parties did not have a meeting of the minds when they entered into the Arbitration Agreement and agreed to arbitrate claims arising out of the employment relationship before JAMS in Orange County, California.

**B.** **The Choice of Forum and Confidentiality Terms Are Not Unconscionable.**

Morris argues that the choice of forum and confidentiality terms in the parties' Arbitration Agreement are one-sided and unfair to such an extent that the arbitration terms are "overall unconscionable" and "should be found void in the entirety." (Doc. 19 at 14.) In Arizona, an arbitration agreement, like any other contract, may be unenforceable due to procedural or substantive unconscionability. *See Rizzio v. Surpass Senior Living LLC*, 492 P.3d 1031, 1035 (Ariz. 2021). "Substantive unconscionability concerns the actual terms of the contract and whether they are overly oppressive or unduly harsh to one of the parties." *Id.* Procedural unconscionability looks to whether the bargain involved "unfair surprise, fine print clauses, mistakes or ignorance of important facts." *Maxwell v. Fid. Fin. Servs., Inc.*, 907 P.2d 51, 57–58 (Ariz. 1995). Morris's arguments are unpersuasive. Morris presents no evidence of procedural unconscionability, and the choice of forum and confidentiality terms are not so unfair or unduly harsh as to be substantively unconscionable.

First, the term designating Orange County, California as the forum for arbitration is not unfairly one-sided simply because it requires Morris to travel from Arizona to California to participate. The fact that Morris agreed to travel a limited distance to California when he entered into the Arbitration Agreement is not a reason to find that provision unconscionable. Notably, the forum-selection term is not as one-sided as Morris

1    suggests—a representative from PARDS would also be required to travel from Arizona to

2    California. (*See* Doc. 20 at 9.)

3           Second, Morris asserts that the confidentiality provision in the Arbitration

4    Agreement is unfair and unconscionable because it would impede discovery. That

5    provision states, "[e]xcept as may be required by law or as may be necessary to obtain court

6    enforcement of an arbitration award, neither a party nor an arbitrator may disclose the

7    existence, content, or results of any arbitration hereunder without the prior written consent

8    of both parties." (Doc. 18-1 at 16 ¶ 5.) Morris asserts that courts have "regularly held

9    similar confidentiality terms unconscionable," (Doc. 19 at 11), citing *Barnett v. V.T.*

10   *Motors LLC*, No. CV-21-01195-PHX-SPL, 2021 WL 5759113, *5 (D. Ariz. Dec. 3, 2021).

11   In *Barnett*, the court found the "sweeping scope" of the parties' confidentiality provision

12   unfairly one-sided because it prevented the plaintiff from investigating and conducting

13   discovery while the employer had the benefit of knowledge about past arbitration

14   proceedings. 2021 WL 5759113, at *5. Morris contends that the confidentiality provision

15   in the Arbitration Agreement with PARDS similarly "den[ies] Plaintiff an ability to discuss

16   arbitration matters with potential witnesses to obtain evidence and testimony for the

17   litigation." (Doc. 19 at 12.) The Court disagrees.

18          The confidentiality provision here is not so sweeping in scope as the provision at

19   issue in *Barnett* and does not categorically deny Morris the ability to obtain evidence. The

20   confidentiality provision applies only to the disclosure of the existence, content, or results

21   of the arbitration and does not prevent Morris from discussing the facts underlying the

22   dispute with any potential witness. It also contains a carveout that prevents the imposition

23   of a "gag order" on Morris because either party may disclose information with prior written

24   consent, and the arbitrator may issue document and witness subpoenas at the request of any

25   party.[3] Thus, the confidentiality provision does not unfairly impede discovery and is not

26   _____

27   [3]  Rule 21 of JAMS Comprehensive Arbitration Rules & Procedures states: "At the written
     request of a Party, all other Parties shall produce for the Arbitration Hearing all specified
28   witnesses in their employ or under their control without need of subpoena. The Arbitrator
     may issue subpoenas for the attendance of witnesses or the production of documents."

1    unconscionable or unenforceable.

2        **C.      The Limitation-on-Remedies Provision Is Enforceable, But the Fee-**

3                **Shifting Provision Must Be Severed.**

4            The parties' Arbitration Agreement precludes the award of punitive or

5    non-economic damages and requires payment of attorneys' fees to a prevailing defendant.[4]

6    Morris argues that these provisions are unenforceable because they prospectively waive

7    his statutory rights under the ADA and Arizona law, and conflict with "important statutory

8    public policies of anti-discrimination and anti-retaliation" found in the ADA and the

9    Arizona Fair Wages and Healthy Families Act. (Doc. 19 at 10–13.)

10           Under the ADA, a plaintiff who succeeds in a judicial action alleging unlawful

11   intentional discrimination may recover compensatory damages and, if the employer

12   engaged in a discriminatory practice with malice or reckless indifference, punitive

13   damages. 42 U.S.C. § 1981a(a)(2), (b)(1). Compensatory damages may include non-

14   economic damages, such as emotional pain and suffering, although a total award is limited

15   to $50,000 where the employer has more than 14 and fewer than 101 employees, and

16   $100,000 where the employer has more than 100 and fewer than 201 employees.[5]

17   *Id.* § 1981a(b)(3). Both the ADA and Arizona Fair Wages and Healthy Families Act permit

18   the award of reasonable attorneys' fees to a prevailing plaintiff. *See id.* § 12205; A.R.S.

19   _____

20   *JAMS    Comprehensive    Arbitration    Rules    &    Procedures*,    JAMS,
     https://www.jamsadr.com/rules-comprehensive-arbitration/#Rule-21 (last accessed July
21   25, 2023).

22   [4] The Arbitration Agreement provides that "the arbitrator shall be empowered to award an
     appropriate remedy, including but not limited to monetary damages, injunctive relief or
23   other equitable relief, but shall have no power or authority to award damages for
     non-economic loss, including punitive or exemplary damages." (Doc. 18-1 at 15 ¶ 3(C).)
24   The Arbitration Agreement also provides that "the substantially prevailing party shall
     recover from the losing party the reasonable attorneys' fees and costs incurred by the
25   substantially prevailing party." (*Id.* at 16 ¶ 3(E).)

26   [5] Morris alleges that Defendants had more than 15 employees at all relevant times. (Doc.
     1 ¶ 5.) The precise number of employees employed by Defendants during the time period
27   applicable to Morris's claims is not in evidence and is not relevant to the Court's
28   determination here.

§ 23-364(G). The Arizona law does not permit the award of fees or costs to a prevailing defendant. *See* A.R.S. § 23-364(G). A defendant who prevails in an ADA case may only be awarded fees upon a finding that the action was "frivolous, unreasonable, or without foundation." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978); *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1190 (9th Cir. 2001) (applying *Christiansburg* rule in ADA case).

Because arbitration is a matter of contract, if a party agrees to submit claims to arbitration, the party will be held to that agreement unless the party can prove Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue. *Zoller v. GCA Advisors, LLC*, 993 F.3d 1198, 1201 (9th Cir. 2021). Such intent may be found in the statute's text or legislative history, or inferred if there is an "inherent conflict" between the purported waiver and the act's underlying purposes. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). When the claims arise under federal laws protecting victims of discrimination, such as Title VII or the ADA, the Ninth Circuit requires that the waiver of statutory rights be knowing. *Zoller*, 993 F.3d at 1202–03; *Nelson v. Cypress Bagdad Copper Corp.*, 119 F.3d 756, 762 (9th Cir. 1997) ("Any bargain to waive the right to a judicial forum for civil rights claims, including those covered by the ADA, in exchange for employment or continued employment must at the least be express: the choice must be explicitly presented to the employee and the employee must explicitly agree to waive the specific right in question.").

Nothing in the text of the ADA precludes an individual from agreeing to arbitrate disability discrimination claims or waiving the right to pursue punitive or non-economic damages in arbitration, and Morris does not identify any relevant legislative history of the statute. Nor has Morris met his burden to show that the underlying purposes of the ADA are so inherently in conflict with the Arbitration Agreement's limitation on damages that the Court could infer that Congress intended to preclude such a waiver. While Morris is correct that one of the purposes of the ADA is to deter disability discrimination and compensate harmed individuals, the statute itself contains strict caps on total awards,

regardless of the type of damages. *See* 42 U.S.C. § 1981a(b)(3). By including these caps, Congress chose to strike a balance that prospectively limits the amount an employer can be liable for, even if punitive damages may be awarded. It is possible that, in some cases, a plaintiff may succeed on an ADA claim but experience more loss than the available cap and not be fully compensated for that harm.

The Arbitration Agreement similarly limits the amount Defendants may be liable for by excluding punitive and non-economic damages, but it does not cap the total award. In fact, "the arbitrator is empowered to award any appropriate remedy" to compensate a prevailing plaintiff. (Doc. 18-1 at 15 ¶ 3(C).) When Morris entered into the Arbitration Agreement, he had already been employed by Defendants for a year as an Associate Dentist. Morris neither alleges that he lacked knowledge of any of the Arbitration Agreement's terms nor asserts that he lacked the opportunity to negotiate these terms. In the Arbitration Agreement, Morris expressly agreed to arbitrate claims of discrimination arising under the ADA or Arizona law and waived his right to seek punitive or non-economic damages. Because there is no evidence that Congress intended to preclude such a waiver, the Court finds that the limitation on damages in the Arbitration Agreement is enforceable.

On the other hand, the Arbitration Agreement's fee-shifting provision does conflict with the purposes of the ADA and the Arizona Fair Wages and Healthy Families Act because it could deter potential plaintiffs from bringing "important, close, but ultimately unsuccessful civil rights cases." *See Assoc. of Mex.-Am. Educators v. California*, 231 F.3d 572, 592–93 (9th Cir. 2000). Fee-shifting provisions like the one in the parties' Arbitration Agreement have been found unenforceable because they put the party "who demand[s] arbitration at risk of incurring greater costs than they would bear if they were to litigate their claims in federal court." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1104 (9th Cir. 2010) (finding fee-shifting clause substantively unconscionable). Under the parties' Agreement, it is possible that Morris might be required to pay fees that could not be awarded in a judicial forum if he does not prevail in arbitration, even if his claims are not "frivolous,

unreasonable, or without foundation." *See Brown*, 246 F.3d at 1190. There is an inherent conflict between these statutes' purpose to deter discrimination and compensate harmed individuals and a fee-shifting clause that places plaintiffs at risk of bearing the full costs of pursuing close claims. As a result, this provision of the Arbitration Agreement is unenforceable.

The Arbitration Agreement contains a severability clause, providing that any term "declared void or unenforceable . . . shall be severed and/or modified by the arbitrator or court and the remainder of this agreement shall be enforceable." (Doc. 18-1 at 16 ¶ 7.) The Court will modify the provision of the Arbitration Agreement providing that "the substantially prevailing party shall recover from the losing party the reasonable attorneys' fees and costs incurred by the substantially prevailing party," (*see id.* at 16 ¶ 3(E)), and require that it be applied consistent with the ADA and Arizona law. In the event that Defendants are the substantially prevailing party on Morris's ADA claim, the arbitrator may only award fees and costs upon a finding that the action was frivolous, unreasonable, or without foundation. In the event that Defendants are the substantially prevailing party on Morris's Arizona law claim, Defendants may not be awarded fees or costs.

**III.    The Arbitration Agreement Encompasses the Claims at Issue.**

Finally, federal policy favors referring claims to arbitration when the arbitration clause broadly covers matters "relating to" or "pertaining to" the contractual relationship. *See Chiron Corp.*, 207 F.3d at 1130–31. Similarly, courts enforce arbitration provisions covering "every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999).

Here, the Arbitration Agreement requires private binding arbitration as the forum to resolve "any claim, dispute, and/or controversy (including, but not limited to, any claims of discrimination and harassment, whether they be based on local or state law . . . [or] the Americans with Disabilities Act . . .) that the Employee or PARDS may have against the other." (Doc. 18-1 at 15 ¶ 1.) The Agreement "specifically includes any claim . . . arising

from, related to, or having any relationship or connection whatsoever with the Employee's seeking employment with, employment by, termination of employment, or other association with PARDS," and any claim arising under the Employment Agreement. (*Id.*) As discussed above, Morris brings one claim alleging employment disability discrimination under the ADA and retaliation for the use of sick time in violation of the Arizona Fair Wages and Healthy Families Act. Thus, the Arbitration Agreement encompasses Morris's claims because each arises out of his employment relationship with Defendants and are expressly included in the Agreement.

## CONCLUSION

The Ninth Circuit has held that courts have discretion under § 3 of the FAA to dismiss claims that are subject to an arbitration agreement. *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 637–38 (9th Cir. 1988); *Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 940 (9th Cir. 2009). If the court determines that all claims raised in the action are subject to arbitration, the court may dismiss the action outright. *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073–74 (9th Cir. 2014). Having determined that a valid agreement to arbitrate all the claims at issue in this case exists between the parties, the Court will grant Defendants' Motion, dismiss this action, and compel Morris to submit his claims to binding arbitration pursuant to the Arbitration Agreement. The fee- and cost-shifting provision in Paragraph 3(E) of the Agreement is modified consistent with this Order.

Accordingly,

**IT IS ORDERED:**

1.       Defendants' Motion to Dismiss and Compel Arbitration (Doc. 18) is **GRANTED**.

2.       Plaintiff's Complaint is **DISMISSED** without prejudice.

3.       Plaintiff Morris is compelled to binding arbitration under the terms of the parties' Arbitration Agreement, except that Paragraph 3(E) of the Agreement is modified consistent with this Order.

4.      The Clerk of Court shall enter judgment accordingly and close its file in this action.

Dated this 26th day of July, 2023.

Honorable Jennifer G. Zipps
United States District Judge